# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| PARK BOARD LTD., | § | |
| | § | |
| v. | § | Civil Action No. 4:18-cv-382 |
| | § | Judge Mazzant |
| STATE AUTOMOBILE MUTUAL | § | |
| INSURANCE COMPANY and DANIEL | § | |
| PROUGH | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants State Automobile Mutual Insurance Company and Daniel Prough's (collectively, "State Auto") Motion to Dismiss (Dkt. #39). After careful consideration, the motion will be denied.

## BACKGROUND

Plaintiff Park Board Ltd. ("Park Board") purchased an insurance policy (the "Policy") from State Auto in January 2017 for a commercial building in Collin County. The Policy includes a clause entitling the insurer and insured to an "appraisal," which determines the amount of loss to damaged property if the Parties disagree on the initial valuation. Either side may demand an appraisal, which prompts each side to select its own appraiser. The chosen appraisers subsequently select a third—an "umpire"—or have one appointed by the Court. Working together, the group will determine the appropriate amount of damage.

In March and April of 2017, Park Board's property sustained damage from severe wind and hail storms. Park Board reported a claim to State Auto immediately. State Auto's adjuster assessed the claim and found a damage amount of $8,097.85 (below the policy's $26,006.00 deductible) (Dkt. #42, Exhibit 1 at p. 1, 3). Because the adjuster determined the damage to be less than the Policy's deductible, State Auto informed Park Board that it would not pay the claim via

email on April 7, 2017 (Dkt. #42, Exhibit 1 at p. 1). Park Board contends that State Auto failed to conduct a good faith investigation into the damages and that a reasonable insurer would not have valued the claim so low. Not satisfied with the result from the adjuster, Park Board sought to initiate appraisal pursuant to the Policy in January 2018 (Dkt. #30, ¶ 32). According to Park Board, State Auto denied the request for appraisal in breach of the Policy. In response, Park Board filed suit in April 2018, a year after the storm occurred. The Parties ultimately initiated the Appraisal process in August 2018.

State Auto's appraiser and the umpire signed and issued their findings in April 2019. The appraisers found that it would cost $211,546.56 to purchase replacement parts for any damages to the property. They also found that, at the time the wind and hail storms hit, the parts of the property that were damaged had already depreciated in value by $80,165.61. This means that the "actual cash value" of the parts needing repairs amounted to $131,380.95. State Auto provided Park Board with a check for $49,531.29 shortly after. Due to the deductible and prior payments State Auto had made to Park Board, this payment ensured that the $131,380.95 "actual cash value" determination was satisfied.[1] Under some circumstances, the Policy provides Park Board with the *full replacement cost* for damage to its property—including the amount of depreciation. State Auto informed Park Board that it would pay the $80,165.16 depreciation amount once repairs were completed. But it also advised that Park Board has "**2 years from the date of the loss in which to actually complete the repairs in order to collect the balance of the damages**"—a date that has passed. (Dkt. #39, Exhibit 4 at p. 3) (emphasis in original).

---

[1] State Board contends that it has actually paid Park Board more than the $131,380.95 by this point.

2

State Auto now moves to dismiss Park Board's claims, arguing that payment of an appraisal award forecloses any possibility of suit (Dkt. #39, ¶ 3.1). Park Board counters that its claims should survive because it sustained injury separate from the damage caused by the storm.

**LEGAL STANDARD**

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). "This standard 'simply calls for

enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

**DISCUSSION**

The Parties dispute whether the completed appraisal forecloses Park Board from bringing suit. While appraisals function as an alternative to litigation, they do not supplant adjudication. *Sec. Nat. Ins. Co. v. Waloon Inv., Inc.*, 384 S.W.3d 901, 905 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The amount of appraisal damages is not contestable, but other aspects of the insurer's conduct could entitle an insured to relief. *Id.* The relevant case law supports allowing Park Board to proceed on its claims to the extent they seek damages beyond those covered in the appraisal award.

Park Board's seven causes of action can be separated into three categories: Contractual, Extra-Contractual, and the Prompt Payment of Claims Act violations. The Court addresses each in turn.

**I. Breach of Contract**

Park Board's breach of contract claim is based on two breaches: (1) the initial undervaluation of the damaged property below the deductible amount, and (2) the denial of its first request for appraisal. State Auto's Motion to Dismiss should be granted as to Plaintiff's first breach, but denied as to the second.

It is well established that a breach of contract claim is barred when appraisal is executed and the award is promptly paid. *Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, 459 F. App'x. 366, 369 (5th Cir. 2012). Appraisals function as contractual mechanisms to determine the amount of damage when the parties have reached an impasse. *Ortiz v. State Farm Lloyds*, ___ S.W.3d ___, No. 17-1048, 2019 WL 2710032, at *4 (Tex. June 28, 2019). As a result, even if an insurer initially undervalued property damage, it will not be in breach where appraisal has already remedied the disagreement. *Id.* at *3. An insurer therefore does not breach a policy merely because the appraisal amount was greater than the adjuster's initial valuation. But an insurer may still be liable on a breach separate from the initial valuation.

The Texas Supreme Court's decision in *Ortiz* is instructive. In *Ortiz*, the plaintiff's home was damaged by wind and hail. 2019 WL 2710032, at *1. Ortiz subsequently filed a claim with State Farm Lloyds, his insurance provider. *Id.* State Farm then sent an adjuster to inspect the property, who concluded that the amount of the damage was less than that of the deductible. *Id.* This meant that Ortiz was not entitled to payment on his claim. *Id.* Dissatisfied with this result, the plaintiff retained an adjuster who found that he suffered a loss far exceeding the deductible amount. *Id.* State Farm subsequently conducted a second inspection. *Id.* The second valuation, while higher than the first, was still under the policy's deductible amount. *Id.* After the second adjustment, Ortiz sued State Farm for breach of contract and various extra-contractual claims. *Id.* Because the parties could not agree on the amount of damages, State Farm invoked the appraisal provision in the Policy. *Id.* The appraisal process returned a finding of loss greater than the deductible, which State Farm promptly paid. *Id.* at *2. State Farm then moved for summary judgment, arguing that the appraisal payment resolved all claims in the suit. *Id.* Both the trial

court and court of appeals found the granting of the motion to be proper and the Texas Supreme Court agreed—at least as to the breach of contract claims. *Id.* at *1.

The Texas Supreme Court held that the insurer did not breach the policy for originally assessing the loss as less than the appraisal award. *Id.* at *3–*4. On the contrary, appraisals are included in the policy for the sole purpose of resolving disputes over damage amounts. *Ortiz*, 2019 WL 2710032, at *4; *see also Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 343 (Tex. App.—Corpus Christi–Edinburg 2004, pet. denied) (mem. op.) (explaining that an insured "may not use the fact that the appraisal award was different than the amount originally paid as evidence of breach of contract, especially when the contract they claim is being breached provided for resolution of disputes through appraisal."). Because Ortiz had only identified one breach—State Farm's initial failure to pay its covered losses—the Texas Supreme Court found that State Farm was entitled to summary judgment on the breach of contract claim. *Ortiz*, 2019 WL 10032 at *4.

Here, as in *Ortiz*, Park Board is alleging that State Auto is in breach of contract. Park Board claims that State Auto breached the Policy by initially valuing the damage to be less than the deductible and, therefore, denying its claim. But, as the Texas Supreme Court explained in *Ortiz*, the appraisal process already resolves any dispute over the amount of loss *pursuant to the Policy*. And the difference in the adjuster's low damage valuation and the issued appraisal award does not equate to a breach. *Ortiz*, 2019 WL 2710032, at *3–*4. Accordingly, Park Board's breach of contract claim is extinguished to the extent it is based on State Auto's failure to initially pay the claim.

However, Park Board's breach of contract claim should proceed in part because, unlike in *Ortiz*, Park Board alleges that State Auto also violated the Policy separate and apart from the initial valuation of loss. The Policy's Appraisal Clause states that, if there is a disagreement as to the

6

amount of loss, either party "…may make written demand for an appraisal of the loss" and each party "*will* select" an appraiser *within twenty days* (Dkt. #42, ¶ 13) (emphasis added). Park Board claims that, following the initial denial of its claim, it demanded appraisal via an email on January 13, 2018, and that State Auto denied the request (Dkt. #30, ¶ 32). The Court acknowledges that other documents suggest that Park Board requested the appraisal in August 2018. But, at this stage, the Court accepts Park Board's allegations as true. As a result, Park Board is entitled to show that State Auto denied the demand in January in breach of the Policy and seek damages that *only* resulted from that breach (rather than the mere denial of benefits).

In sum, Park Board's breach of contract claim is dismissed to the extent it is based on State Auto's "failure" to pay the claim, but denied to the extent the claim is based on State Auto's refusal to comply with the January 2018 appraisal demand.

## II. Extra-Contractual Claims

Park Board also brings "extra-contractual" claims for Unfair or Deceptive Acts or Trade Practices (prohibited by Texas Insurance Code § 541.060(a)), Breach of Common Law Duty of Good Faith and Fair Dealing, Breach of Express or Implied Warranty, Fraud, and Negligence.

For extra-contractual claims to survive, a breach of contract does *not* have to be present. *Ortiz*, 2019 WL 2710032, at \*5 (citing *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018)). However, to recover on extra-contractual claims where an appraisal has been completed, the plaintiff must allege a "statutory violation that causes an injury independent of the loss of benefits under the policy." *Id.* at \*5, \*15. This means that the plaintiff must claim "actual damages" that have not already been paid following the appraisal process. *See id.* at \*5 (finding appraisal mooted certain bad faith claims where "the only 'actual damages' Ortiz seeks are the policy benefits *wrongfully* withheld, and those benefits *have already been paid pursuant to the*

7

*policy*") (emphasis added). Attorney's fees, court costs, and treble damages are *not* considered actual damages, but would be recoverable on an award of underlying actual damages. *Id.* at *5.

Like its breach of contract claims, Park Board's extra-contractual claims are moot to the extent they seek damages for policy benefits that State Auto paid following the appraisal process. But Park Board also seeks additional damages through its extra-contractual claims. Under Park Board's theory of the case:

(1) State Auto committed the extra-contractual violations in question by consciously failing to *promptly* process its claim;

(2) Park Board was consequently unable to timely make certain repairs, which would have entitled it to depreciation costs under the Policy; and

(3) As a result, Park Board should be able to recover the amount of depreciation costs it *would have* been entitled to under the Policy and any other damages resulting from State Auto's conduct.

Because Park Board contends that it is *not entitled* to the $80,000 under the Policy, Park Board's extra-contractual claims necessarily seek relief separate from its actual policy benefits. *See Menchaca*, 545 S.W.3d at 497 ("[A]n insured can recover benefits as actual damages under the Insurance Code even if the insured has no right to those benefits under the policy, *if the insurer's conduct caused the insured to lose that contractual right*.") (emphasis in original). After all, the appraisal process moots any claims that seek policy benefits to prevent double recovery, and Park Board has not received payment for the $80,000 it seeks. *See Ortiz*, 2019 WL 2710032, at *5 ("Ortiz has received all the policy benefits to which he is entitled; thus, no outstanding benefits remain to be recovered as damages for an alleged statutory violation.").

State Auto suggests that Park Board may still be entitled to the $80,000 in question under the Policy once Park Board makes certain repairs. According to State Auto, this means that the appraisal moots Park Board's request for the $80,000. But there are serious questions as to whether

8

Park Board can still recover the $80,000 under the Policy, as State Auto argues, or whether it can recover this amount only through its extra-contractual claims. As Park Board correctly notes, State Auto has indicated that it would pay Park Board the $80,000 in question only if Park Board made repairs to the property "**2 years from the date of the loss**," a date that has passed. (Dkt. #39, Exhibit 4 at p.3) (emphasis in original). Dismissing Park Board's extra-contractual claims based on the appraisal would be premature in light of the limited briefing and evidence before the Court. This is especially true since State Auto *also* seeks damages for other harms that may be independent from policy benefits—namely the interruption caused to its business operations and its inability to lease property to new tenants while the claims were pending. Park Board's extra-contractual claims consequently survive to the extent described herein.

### III. PPCA Claims

Finally, Plaintiff also brings claims under the Texas Prompt Payment of Claims Act ("the PPCA"), which sets out guidelines facilitating the timely payment of insurance claims. TEX. INS. CODE ANN. § 542.054, 542.057. The issue here is whether timely payment of an appraisal award forecloses an insurer from being in violation of the PPCA. The Court finds that an appraisal does not bar PPCA claims.

While the PPCA does not explicitly address how the initiation of the appraisal process affects the timing guidelines, the Texas Supreme Court has clarified how it should be treated in *Barbara Techs. Corp. v. State Farm Lloyds*., __ S.W.3d __, No. 17-0640, 2019 WL 2710089, at *1 (Tex. June 28, 2019). In that case, Barbara Technologies ("Barbara Tech")'s commercial property was damaged in a wind and hail storm in March 2013. *Id.* at *1. Barbara Tech subsequently filed a claim with its insurer, State Farm, requesting coverage for the repairs. *Id.* State Farm inspected the property and found the damage to be less than the deductible, thus

denying the claim under the policy. *Id.* Barbara Tech requested a second inspection in February 2014 and State Farm again found the same amount of damage. *Id.* Barbara Tech filed suit in July 2014, prompting State Farm to invoke the appraisal provision. *Id.* In August 2015, the appraisal award was issued and paid (minus depreciation and the deductible). *Id.* Barbara Tech accepted the payment, but still claimed it was owed statutory damages for State Farm's failure to comply with the PPCA's sixty-day time limit for payment. *Id.* While the trial and appellate courts found that a payment of an appraisal award bars a claim under the PPCA, the Texas Supreme Court held otherwise. *Id.* at *2.

Examining Chapter 542 of the PPCA, the Texas Supreme Court interpreted the lack of appraisal language to mean that the legislature intended neither to impose specific deadlines for the contractual appraisal process within the scheme, nor to exempt the contractual appraisal process from the deadlines provided. *Id.* at *5. Accordingly, the Texas Supreme Court found that an insured could be entitled to recovery on a showing that (1) it was initially liable for the claim under the policy and (2) it violated a provision of the PPCA. *Id.* at *4–*5. Because State Farm did not accept liability under the policy and had not been found liable, Barbara Tech was not entitled to PPCA damages as a matter of law. *Id*. at *16. Conversely, State Farm's invocation of appraisal and prompt payment of the award did not exempt it from PPCA damages either. *Id.* For these reasons, the Texas Supreme Court remanded the case to first determine liability and then approach the PPCA timing requirements. *Id.* at *17.

As in *Barbara Tech,* Park Board claims entitlement to full policy benefits plus 10% penalty interest per annum on the amount unreasonably withheld resulting from State Auto's violation of the PPCA (Dkt. #30, ¶ 57). Park Board alleges that State Auto wrongfully "denied" its claim until April 15, 2019 (seven days after State Auto paid the award), well past the PPCA's time window

for payment (Dkt. #54, ¶ 10). State Auto counters that it has never denied Park Board's claim for benefits and that the only real dispute has been the amount of damages (Dkt. #56 at p. 5). *But see Barbara Techs.*, 2019 WL 2710089, at *2 (treating a refusal to pay a claim for not hitting the deductible as a denial). But, while the dispute over whether the claim was denied may be relevant on a motion for summary judgment, it is not dispositive as to whether a claim under the PPCA should continue at this stage. As stated, when an appraisal has been completed, the PPCA time limits only attach on a finding of liability. *Id.* at *16. State Auto maintains that it has "never accepted liability" even if Park Board claims otherwise (Dkt. #56, p. 5). Payment of an appraisal award has no bearing on a finding of liability; its only purpose is to determine the amount of damages. *Breshears*, 155 S.W.3d at 343. Because payment of an appraisal award neither establishes nor forecloses liability, where an insurer has not explicitly assumed it, it is a matter to be adjudicated. *Barbara Techs.,* 2019 WL 2710089, at *16. State Auto's prompt payment of the appraisal award does not immunize it from being in violation of the PPCA. As a result, the motion to dismiss will be denied as to Park Board's PPCA claim.

## CONCLUSION

Defendants' Motion to Dismiss (Dkt. #39) is **GRANTED IN PART** and **DENIED IN PART**. Accordingly, Plaintiff's claims are dismissed only to the extent they seek damages for policy benefits that have been paid following the appraisal process, as described herein.

**IT IS SO ORDERED.**
**SIGNED this 12th day of August, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE